UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

LAMA ELHORR, ET AL.,

    Defendants.
_____/

Case No. 13-20158

Honorable Nancy G. Edmunds

**OPINION AND ORDER REGARDING POTENTIAL CONFLICT OF INTEREST RAISED BY THE GOVERNMENT [135]**

Defendant Lama Elhorr and several medical professionals have been charged in a 11-count Indictment with various claims of health care fraud stemming from their alleged involvement with House Call Physicians, PLLC ("HCP"). At a hearing held on July 28, 2015, this matter came before the Court on the Government's motion to disqualify Lama Elhorr's counsel–Nabih Ayad–on the basis that he previously represented one of the Co-Defendants in a substantially related matter arising from the same set of facts. For the reasons stated on the record at the July 28, 2015 hearing and below, the Government's motion is GRANTED.

**I.    BACKGROUND**

On September 20, 2012, Dr. Hicham Elhorr, the owner of HCP and brother to Dr. Ali Elhorr and Lama Elhorr (collectively, the "Elhorr Defendants"), was arrested on a criminal complaint asserting various counts of health care fraud. (Dkt. 3, Compl. ). According to the allegations in the complaint, Dr. Hicham Elhorr, in concert with several other HCP

employees, submitted fraudulent claims to Medicare for physician home visits and other services. (*Id.*). On October 17, 2012, less than one month after Dr. Hicham Elhorr was arrested, an investigator with Cahaba Safeguard Administrators, LLC ("Cahaba"), sent a letter to Dr. Ali Elhorr, a former HCP physician, informing him of their decision to "suspend Medicare payments to [him] due to credible allegations of fraud." (Gov. Brf. Ex. A, Cahaba Letter). Cahaba cited several specific allegations of fraud, including, by way of example, requests for reimbursement for services rendered after the beneficiary in question was deceased. (*Id.*).

On October 22, 2012, attorney Nabih Ayad responded to the Cahaba letter, writing that he had "been retained by Dr. [Ali] Elhorr to investigate his current suspension of Medicare payments due to the alleged allegations of fraud." (Gov. Brf. Ex. B, Ayad Letter). Mr. Ayad offered a number of potential explanations in response to Cahaba's assertions, maintaining that

> Dr. Elhorr . . . does not deal with the billing or managing of billing for [HCP]. It was not [until] after your allegation that he inquired as to this with his former employer when he was told that this was probably a billing error by the company itself . . . . Furthermore, the individual that would have direct knowledge of this allegation is the employee that handled billing directly, namely the biller and/or the manager of [HCP], not Dr. Elhorr.

(*Id.*). In other words, Dr. Ali Elhorr's primary argument in favor of reinstating his Medicare payments was that "he did not cause claims to be submitted", and thus any allegations of fraud were attributable to HCP's billing department. (*Id.*)

On December 5, 2013, the Grand Jury returned a superseding Indictment against the Elhorr Defendants and a number of other individuals affiliated with HCP. Similar to Cahaba's letter, the Indictment alleges that the Elhorr Defendants submitted claims to

Medicare for services that were medically unnecessary and, at times, not provided. More specifically, with respect to Lama Elhorr, the Indictment asserts that she (1) "was an office manager at and a biller for HCP and submitted claims for reimbursement to Medicare on HCP's behalf", and (2) "would fabricate and falsify . . . medical and billing documents to reflect or support purported physician home visits and services billed to Medicare that were not medically necessary and not provided." (Dkt. 42, Supersed. Indict. ¶¶19, 27). On December 12, 2013 attorney Arthur Weiss entered an appearance on behalf of Lama Elhorr. Mr. Weiss represented Lama Elhorr up until July 8, 2015, at which point the Court granted her request to substitute Mr. Ayad as her new counsel of record.

At a status conference conducted on July 15, 2015, the Government raised concerns about the propriety of Mr. Ayad's representation of Lama Elhorr in light of his previous representation of Dr. Ali Elhorr. According to the Government, "Mr. Ayad's previous representation of Dr. Ali Elhorr in connection with the suspension of Medicare payments for services rendered by him for HCP raises concerns under the ethical principles governing successive representation." (Gov. Br. 6). For the reasons that follow, the Court agrees.

## II.  ANALYSIS

Where, as here, "a constitutional right to counsel exists, our Sixth Amendment cases hold that there is a correlative right to representation that is free from conflicts of interest." *Wood v. Georgia*, 450 U.S. 261, 271, 101 S.Ct. 1097, 67 L.Ed.2d 220 (1981); (citing *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). Although the Court "must recognize a presumption in favor of [the defendant's] counsel of choice, . . . that presumption may be overcome not only by a demonstration of actual conflict but by a

3

showing of a serious potential for conflict." *Wheat v. United States*, 486 U.S. 153, 160, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988). "When a trial court becomes aware of a potential conflict of interest, it is obligated to pursue the matter even if counsel does not." *United States v. Straughter*, 950 F.2d 1223, 1233 (6th Cir.1991) (quoting *United States v. Krebs*, 788 F.2d 1166, 1172 (6th Cir.1986)). Moreover, "where a court justifiably finds an actual conflict of interest, there can be no doubt that it may decline a proffer of waiver, . . . . " *Wheat*, 486 U.S. at 162.

Here, Mr. Ayad's representation of Lama Elhorr after previously representing Dr. Ali Elhorr presents a situation of successive representation. "Successive representation occurs where defense counsel has previously represented a co-defendant or trial witness." *Moss v. United States*, 323 F.3d 445, 459 (6th Cir. 2003). As the Sixth Circuit has noted, "[t]he fear in successive representation cases is that the lawyer will fail to cross-examine the former client rigorously for fear of revealing or misusing privileged information." *Id.* at 460. While the test to be applied to conflicts arising from successive representation has been the subject of ongoing debate, the Sixth Circuit, relying on *Enoch v. Gramley*, 70 F.3d 1490 (7th Cir. 1995), has held that the alleging party must demonstrate that "(1) counsel's earlier representation of the witness or co-defendant was substantially and particularly related to counsel's later representation of defendant; or (2) counsel actually learned particular confidential information during the prior representation of the witness or co-defendant that was relevant to defendant's later case." *Moss*, 323 F.3d at 462.

Under the circumstances related to Mr. Ayad's prior representation of Dr. Ali Elhorr, the Court finds that his continued representation of Lama Elhorr is rife with the potential for actual conflict. First and foremost, there is no question that the two matters involve "the

same basic issues, facts, and time period." *United States v. Bussell*, 10-CR-159, 2012 WL 32639, at *5 (E.D. Tenn. Jan. 6, 2012) ("The Court finds that the fact that the state and federal charges encompass the same time period and allege the same activities renders them substantially related . . . ."). Indeed, the letter from Cahaba–setting forth "credible allegations of fraud" against Dr. Ali Elhorr–and the Indictment revolve around the same general premise, namely: that the Elhorr Defendants, though HCP, "billed Medicare for home visits that were not medically necessary and services that were never rendered." (Gov. Br. 8, Ex. A, Cahaba Letter). In fact, the letter and the Indictment reference some of the same specific instances of fraud. *Compare Id.* ("Specifically, you submitted claims for services provided to deceased beneficiaries and for services allegedly provided to beneficiaries during time period that you were not in the United Sates."), *with* Indictment at ¶ 26 (the Elhorr Defendants submitted "false claims to Medicare for . . . services on dates when they were not in the United States . . . [and for] physician home visits purportedly rendered after the beneficiaries were deceased . . . ."). Accordingly, there is no doubt that the facts giving rise to the Cahaba letter are substantially the same as the Government's criminal investigation of HCP and the Elhorr Defendants.

The potential for conflict stemming from Mr. Ayad's successive representation of two defendants implicated in the same criminal scheme is likewise apparent. According to Dr. Ali Elhorr's response to Cahaba's allegations–drafted by Mr. Ayad–"the individual that would have direct knowledge of [the fraud] allegation is the employee that handled billing directly, namely the biller and/or the manger of House Call Physicians." (Cahaba Letter 2). In other words, Dr. Ali Elhorr's response strongly suggests that he is considering a defense that would directly implicate HCP's "biller and/or manager"; a position allegedly occupied

5

by Lama Elhorr for a substantial period of time. Assuming Dr. Ali Elhorr proceeds with this line of defense at trial, Mr. Ayad could be faced with the prospect of cross-examining his former client, or, worse yet, revealing privileged information he learned during the course of the Cahaba matter. "[I]n the context of successive representations, [it is] difficult to envision circumstances more fraught with inherent conflict than where an [] attorney . . . must present a defense theory inculpating the attorney's former client, particularly where the former representation was factually intertwined with the criminal defendant's case." *Church v. Sullivan*, 942 F.2d 1501, 1511 (10th Cir. 1991).

While the Court is mindful of the fact that its decision is premised, to a large degree, on matters that are inherently speculative, "[u]nfortunately for all concerned, a district court must pass on the issue whether or not to allow a waiver of a conflict of interest by a criminal defendant not with the wisdom of hindsight after the trial has taken place, but in the murkier pre-trial context when relationships between parties are seen through a glass, darkly." *Wheat*, 468 U.S. at 162-63. For that reason, "even assuming lack of a present conflict, the court cannot ignore the potential for (perhaps even the probability of) future conflicts, which raises the specter of direct appeal or serious collateral attack to these criminal proceedings." *United States v. McAdoo*, No. 07-20076, 2007 WL 2372360, at *2 (E.D. Mich. Aug. 17, 2007) (disqualifying the defendant's counsel on the basis that he previously represented a co-defendant at a bond hearing in the matter). Accordingly, the Court must, and does, find that attorney Nabih Ayad is disqualified from representing Lama Elhorr.

Furthermore, Lama Elorr is advised that she must retain new counsel within thirty (30) days of this Order. The Court finds that any delay attributable to this adjournment is excludable delay under the provisions of 18 U.S.C. § 3161(h)(7)(A) in that the ends of

justice outweigh the best interest of the public and the Defendants in a speedy trial.

### III. Conclusion

For the above-stated reasons, the Government's motion to disqualify attorney Nabih Ayad is GRANTED. The Clerk is directed to serve a copy of this Order on Lama Elhorr.

SO ORDERED.

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: August 5, 2015

I hereby certify that a copy of the foregoing document was served upon counsel of record on August 5, 2015, by electronic and/or ordinary mail.

s/Carol J. Bethel
Case Manager